KONKEL, Plaintiff in error, vs. THE STATE, Defendant in error.

*November 9, 1918—January 7, 1919.*

*Civil process: Exemption of persons in military service: Constitutional law: Validity of state statute: When federal law paramount.*

1. Ch. 409, Laws 1917 (sec. 4232a, Stats. 1917), granting to persons in the military service of the United States or of this state exemption from civil process and the right to a stay of proceedings in civil cases pending against them, is not an exercise of the war power exclusively vested in Congress by sec. 8, art. I, Const. of U. S.

2. Nor does said statute conflict with amendm. XIV or with sec. 2, art. IV, Const. of U. S. The privileges and immunities of the act not being denied to citizens of other states by the express terms of the act, it applies to all such citizens.

3. Under its powers, expressly granted, relative to the army and navy, Congress may prescribe the conditions under which persons in the military service of the United States shall be subject to the process of courts, whether state or federal. So, also, a state may confer upon such persons certain privileges and immunities respecting the process of its courts. But when Congress has spoken fully on the subject, the federal statute supersedes that of the state in case of any conflict or difference between them.

4. Thus in a bastardy proceeding against a person in the military service of the United States, the provisions of the federal soldiers' and sailors' civil relief act (40 U. S. Stats. at Large, ch. 20), prescribing the conditions under which the delinquent father may be proceeded against, must govern, as against the more liberal immunity or exemption granted by sec. 4232a, Wis. Stats. 1917.

OWEN, J., dissents.

ERROR to review a judgment of the civil court of Milwaukee county: A. J. HEDDING, Judge.    *Affirmed*.

Bastardy.   On March 2, 1918, a warrant was issued on a complaint charging the plaintiff in error, hereinafter called the defendant, with bastardy.   He was arrested April 1, 1918, and at a preliminary hearing on April 8, 1918, he was held for trial and was tried on May 28, 1918.   Upon the trial it was found that the defendant was the father of a bastard child born December 21, 1917, and he was adjudged to pay the sum of $50 lying-in expenses and to pay $15 a month for the support of the child until the child should arrive at the age of sixteen years. · He was further required by the judgment to give a bond with sureties to secure the payment of·the instalments, and in default thereof it was ordered that he be committed to the house of correction of Milwaukee county, there to be held until he should pay the sum specified in the bond or until otherwise discharged by law.   Upon the trial the defendant claimed immunity from prosecution on the ground that he had been inducted into the military service of the United States on the 24th day of May, 1918, basing his claim upon the provisions of ch. 409, Laws 1917, published. June 16, 1917.   His claim was denied, and to review the judgment rendered against him the defendant has sued out a writ of error.

*P. C. Kolinski*, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, Winfred C. Zabel*, district attorney, and *Walter G. ·Wallschlaeger* and *Arthur G. Bartelt*, assistant district attorneys; and the cause was argued orally by *Mr. Wallschlaeger* and *Mr. Bartelt*.

ROSENBERRY, J.   Assuming, without deciding, that the defendant was entitled to immunity under the terms of ch. 409, Laws 1917, we are led· to the immediate consideration of the question whether or not said chapter is a valid enact-

ment.   It is known in the Wisconsin Statutes of 1917 as sec. 4232*a*, consisting of five subsections.   Sub. 1 provides:

"All persons, residents of this state, now in the military service of the United States or of this state, and all those who may hereafter enlist, be appointed, or drafted into the military service of this state or of the United States, for the purpose of the present war, shall, during such service, be exempt from all civil process, and in all civil cases now pending against any person in such service, the proceeding shall be continued and stayed until the discharge of such person from such service," etc.

Sub. 2 requires the court, whenever it appears that a suit has been commenced against a person while in the military service, to dismiss such suit, and when it shall appear in any case now pending that the principal defendant is in such service, it shall be the duty of the court to stay the proceedings.   Sub. 3 prescribes the manner in which proof of the fact that a person is in the military service of the United States may be established.   Sub. 4 contains certain exceptions applying to executors, administrators, trustees, and foreclosures, where the person in the military service is not the main defendant.   Sub. 5 provides that the time during which any person is exempt from the service of civil process under the provisions of the act shall not be taken as any part of the time limited by law for the commencement of a civil action, etc.

In behalf of the state it is claimed that ch. 409 is invalid (1) because it is an exercise of war power, which is exclusively vested in the United States; (2) because it violates the provisions of the Fourteenth amendment to the constitution of the United States, in that it is discriminatory as between residents of this state and residents of other states; (3) that said enactment is in conflict with the act of Congress known as the soldiers' and sailors' civil relief act and is therefore void and unconstitutional.

The contention that the enactment of ch. 409 is an exercise of the so-called war power by the legislature of the state

of Wisconsin is not tenable. Ch. 409 might be enacted by the legislature of this state wholly independently of the fact that the United States is at war. The right to immunity is based upon the fact that the person proceeded against is in the military service of the United States. Many such acts were passed during the civil war, none of which, however, so far as we are able to discover, was passed upon by the United States supreme court. The courts of Pennsylvania held the act passed in that state constitutional. *Breitenbach v. Bush,* 44 Pa. St. 313; *Coxe's Ex'r v. Martin,* 44 Pa. St. 322.

The provisions of ch. 409 are not in conflict with the terms of the Fourteenth amendment as claimed; neither do its provisions offend against sec. 2, art. IV, of the federal constitution. The privileges of the act not being denied to the citizens of other states by the express terms of the act, it must be held to apply to the citizens of other states of the Union. The citizens of other states are entitled under the federal constitution to enjoy the same privileges and immunities as are conferred upon citizens of this state. Therefore, all the privileges and immunities conferred by the act upon the citizens of this state are conferred upon the citizens of other states, in the absence of language expressly limiting the act to citizens of this state. *Blake v. McClung,* 172 U. S. 239, 19 Sup. Ct. 165; *Estate of Johnson,* 139 Cal. 532, 538, 73 Pac. 424; *Slaughter-House Cases,* 16 Wall. 36, 77.

2. It is claimed that ch. 409 is void because it is in conflict with the soldiers' and sailors' civil relief act, passed by Congress March 8, 1918 (40 U. S. Stats. at Large, ch. 20). Sub. (1), sec. 101, of that act defines what is meant by the term "persons in military service;" sub. (2), what the period of military service is; sub. (3), to what the term "person" refers; sub. (4), what courts are included; sub. (5), what is meant by the term "termination of the war." Sec. 102 provides that the act shall apply to the United States, the several states and territories, the District of Columbia, and all

other territories subject to the jurisdiction of the United States and to proceedings commenced in any court therein. Sec. 200 provides the method by which default judgments may be entered, provides a penalty for the making of false affidavits, payment of attorneys to represent persons in the military service, how judgments rendered against persons in the military service may be opened. Sec. 201 provides for a stay of any proceeding against any person in military service. Sec. 202 prohibits any fine or penalty being incurred by reason of the stay. Sec. 203 provides how a judgment in any action or proceeding commenced in any court against a person in military service before or during the period of such service or within sixty days thereafter may be stayed; sec. 204, the period of stay of actions where there are co-defendants; sec. 205, that the period of military service shall not be included in computing the time within which any action may be brought against a person in the military service; sec. 300, that no eviction shall be brought where the rent does not exceed $50 per month, how eviction proceedings shall be stayed, and the penalty for violation of the provisions of the section, and how the pay of the person in military service may be allotted for the payment of rent for dwelling purposes, etc. Sec. 302 relates to the enforcement of secured obligations. Sec. 600 relates to the transfer of property with intent to delay creditors. Sec. 603 provides that the act shall remain in force until the termination of the war and six months thereafter, and sec. 604 that the act may be cited as the "Soldiers' and Sailors' Civil Relief Act."

Our dual system of government has given rise to many difficult and perplexing questions. No boundary separating the field of federal from the field of state control can be marked out, for the reason that in many cases they overlap. The right to exercise certain powers has been conferred exclusively upon the United States. *Sturges v. Crowninshield,* 4 Wheat. 122, 193. In some instances the states are deprived of the right to exercise certain powers by reason of

the fact that they have been conferred upon the United States. *Prigg v. Pennsylvania,* 16 Pet. 539, 622. In other instances it is said that the states may exercise powers conferred upon the United States until such time as Congress chooses to exercise them. *Houston v. Moore,* 5 Wheat. 1. There are certain fields within which the powers of the states are supreme and in which the United States cannot interfere with the exercise of the powers reserved to the states. *New York v. Miln,* 11 Pet. 102. In certain cases it is held, where the United States and the state have concurrent powers, that the exercise of the power of the United States is exclusive and the enactment of the state must stand aside. *Sturges v. Crowninshield, supra.* In certain other cases it is held that the enactments of both the United States and the state may stand together if there is in fact no conflict. *Asbell v. Kansas,* 209 U. S. 251, 28 Sup. Ct. 485; *Savage v. Jones,* 225 U. S. 501, 32 Sup. Ct. 715. In a particular case classification is often difficult, and the decisions of the federal as well as of the state courts are not always consistent.

In *State v. C., M. & St. P. R. Co.* 136 Wis. 407, 117 N. W. 686, having under consideration state and federal regulation affecting interstate commerce, this court adopted the classification laid down in *Covington & C. B. Co. v. Kentucky,* 154 U. S. 204, 14 Sup. Ct. 1087, where the field is divided into three classes of legislative acts: First, where the states have plenary power, and Congress has no right to interfere. Second, cases of concurrent jurisdiction, where the states may act in the absence of Congressional action. Third, cases where the action of Congress is exclusive and in which the states have no power whether or not Congress has acted. This classification may not be applied with exactness in all cases.

There can be no doubt that Congress, in the exercise of the powers conferred upon it, may prescribe the conditions under which persons in the military service of the United

States shall be subject to the process of courts, whether state or federal. Such provision seems necessarily implied from the provisions expressly granted, to maintain an army and navy. No question as to the validity of the soldiers' and sailors' civil relief act is raised, and we see no ground upon which its validity could be successfully assailed. It is equally within the power of a· state to confer upon persons in the military service of the United States certain privileges and immunities respecting the process of its courts. The United States and the states have a concurrent right in respect to the subject matter here under consideration. The question then arises whether or not there is a conflict between ch. 409 and the soldiers' and sailors' civil relief act, for, if there be a conflict, the act of Congress, by par. 2, art. VI, of the federal constitution, is made the supreme law of the land. *Gibbons v. Ogden,* 9 Wheat. 1.

We think it must be held that the laws clearly conflict. *New York Cent. R. Co. v. Winfield,* 244 U. S. 147, 37 Sup. Ct. 546. In the first place, they speak upon identically the same subject matter; that is, the exemption of persons in the military service of the United States from the process of civil courts. The soldiers' and sailors' civil relief act prescribes what that exemption shall be in the courts of the United States and of the states, including the state of Wisconsin. Ch. 409 prescribes what that exemption shall be within the state of Wisconsin, and it prescribes a different exemption than that prescribed by the soldiers' and sailors' civil relief act.

It is argued that, because ch. 409 grants a more generous immunity or greater exemption than that granted by the soldiers' and sailors' civil relief act, there is no conflict within the principles laid down in *Savage v. Jones,* 225 U. S. 501, 32 Sup. Ct. 715, and in *McDermott v. Wisconsin,* 228 U. S. 115, 33 Sup. Ct. 431. Viewed from the standpoint of the person in the military service of the United States there may be some force to this argument, but he is not the

only person concerned.   In this case the defendant soldier is the father of a child which he is legally and morally bound to support.   The United States prescribes the conditions under which the delinquent father may be proceeded against.   Ch. 409 provides that he may not be so proceeded against.   Upon what theory can it be said that there is no conflict between the two acts?   Ch. 409 is not enacted in the exercise of the police power, so called, for the preservation of the health, morals, or promotion of the general welfare of the state, as were the regulations relating to stock food in the case of *Savage v. Jones, supra,* or the regulations relating to the sale of corn syrup in *McDermott v. Wisconsin, supra;* but ch. 409 stands upon an entirely different basis. The principles applicable to legislation relating to bankruptcy are applicable to this case.   Congress having spoken fully on the subject, the power of the state to enact a law on the same subject is suspended.   *Sturges v. Crowninshield,* 4 Wheat. 122, 196.

There is another principle applicable to the situation under consideration here, and that is that the regulation in respect to the service of civil process upon persons in the military service of the United States is of a purely national character. *Sturges v. Crowninshield, supra.*   The orderly administration of the affairs of the army and navy requires that such regulations should be uniform. The military and administrative officers of the United States ought not to be required to look into the statute books of forty-eight separate states to determine what the privileges and immunities of United States soldiers are.   Congress having, in the exercise of its constitutional powers, provided for the exemption of persons in the military service of the United States from process of civil courts of Wisconsin, it supersedes any like provision made by the state.   *Selective Draft Law Cases,* 245 U. S. 366, 383, 38 Sup. Ct. 159.

It must be held that the laws referred to clearly conflict; that the soldiers' and sailors' civil relief act is the supreme

Konkel v. State, 168 Wis. 335.

law of the land, and so long as it remains upon the statute books of the United States the provisions of ch. 409, Laws 1917, are suspended. *Sturges v. Crowninshield, supra.* The right to proceed in a civil court against a person in the military service of the United States must be determined in accordance with the provisions of the soldiers' and sailors' civil relief act. Ample justice can be done to the defendant in this case under the provisions of that act. Sec. 203 provides:

"In any action or proceeding commenced in any court against a person in military service, before or during the period of such service, . . . the court may, in its discretion, on its own motion, or on application to it by such person . . .

"(1) Stay the execution of any judgment or order entered against such person, as provided in this act, and ·

"(2) . . ."

. Upon filing the *remittitur* in the trial court the defendant, if he be so advised, may apply to the court under the provisions of that section for a stay of proceedings.

*By the Court.*—Judgment affirmed.

The following opinion was filed February 8, 1919:

OWEN, J. *(dissenting).* Sec. 4232a, Stats., responds to a plain sense of justice and voices a humane public policy. It was enacted out of consideration for those who were about to leave their homes, their families, and their business affairs to fulfil the highest duties of citizenship. It was considered unjust to leave those who were called by the government on a mission of service and sacrifice in the interest of their country and of humanity to the mercy of inconsiderate creditors, and it was to save them from default judgments, foreclosure proceedings, forced sales, and their families from unconscionable evictions, that the law was passed. Moreover, in passing the law the state was not without a selfish interest. We are in a better position now than at the

time the law was passed to understand the interest of the state in the welfare of the returning soldier and that of his family during his absence.    The state is primarily and ultimately concerned with the care of its citizens and of those dependent upon them.    In obedience to this duty the state has expended considerable sums of money during the last two years in the support of the dependents of those engaged in military service.    Upon the state falls the financial burden of dependency.    Upon the state falls directly the far heavier burden of the demoralization of its citizenry and of the social unrest which attend destitution and the denial of opportunity.    The state has a direct interest in preserving the property status of those of its citizens who entered the military service so that upon their return they may find their property and their business as they left it and not be relegated to the army of unemployed to become dependencies of the state.    As stated in the majority opinion, a law of this nature was upheld, during the civil war, in Pennsylvania, where it was called "An act to stay proceedings." *Breitenbach v. Bush,* 44 Pa. St. 313.    That is not an inappropriate designation of sec. 4232a.    A more comprehensive designation perhaps would be, "An act to suspend the right of civil process and to stay proceedings."

The subject is one over which the state has plenary power as an incident of sovereignty, except in so far as it may have been delegated to Congress.    The power may be exercised by the legislature, except so far as it is limited by constitutional provisions. There are none such, except those relating to special or class legislation.    The legislature may suspend the right of civil process against any class of its citizens in the interests of justice and in promotion of the general welfare where the classification is germane to the purposes of the legislation.    There is no suggestion that those in the military service of the United States do not constitute such a class.    I apprehend, also, that those not in the military service of the United States, but who have left their homes

Konkel v. State, 168 Wis. 335.

and businesses and with humane and patriotic motives engaged in the work of ministration and mercy to our stricken soldiers, such as nurses of the Red Cross, members of the Salvation Army, representatives of the Y. M. C. A., Knights of Columbus, and similar organizations, would form a legitimate classification for such legislative consideration. If so, then the legislature might grant immunity to the latter class, while, it is held, like consideration cannot be extended to those in the military service of the United States for the reason that the state's power in this respect has been delegated to Congress. While the result is ironical, the conclusion must be accepted if the premise be well founded. If such power has been delegated, it is by reason of the following provisions of sec. 8, art. I, of the constitution of the United States, declaring that Congress has power:

"[11] To declare War, . . .

"[12] To raise and support Armies, . . .

"[13] To provide and maintain a Navy;

"[14] To make Rules for the Government and Regulation of the land and naval Forces;

"[15] To provide for calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions;

"[16] To provide for organizing, arming, and disciplining the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress;

"[18] To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."

It will be conceded at once that these provisions do not amount to an express delegation of the power we are considering. At most it amounts to no more than an implied delegation of power to an extent necessary to carry into

effect the powers expressly granted. Granting that, by implication, the power is delegated to Congress so far as may be necessary to successfully maintain an army and navy and carry on the military activities and undertakings of the government, it can be but a partial delegation of the power. The rest is reserved to the states. In other words, the power of Congress in such respect is exhausted when it has exercised the same so far as may be necessary for the promotion of its military interests. The power of the state to suspend civil process and to stay proceedings for state reasons, namely, as a matter of simple justice to its citizens, to promote the public welfare, and to secure the state against burdensome dependencies, still remains. The respective interests of the state and federal government in this subject are by no means identical. The purposes to be attained are quite different. The federal government is interested in the individual in his capacity as a soldier; the state government is interested in him in his capacity as a citizen. It seems self-evident that the consideration which the state may extend to its citizens in this respect is not limited by the military necessities of the federal government. The immunity which it may enforce does not mark the limit of immunity which the state may grant. I cannot escape the conclusion that even though the federal government has the power to legislate upon this subject so far as may be necessary in prosecuting its military undertakings, its power is limited to the accomplishment of such purposes, and that power to legislate upon the subject in their own interests and pursuant to their own policies still resides with the states.

But it is held in the majority opinion that the two laws under consideration are in conflict. If this be true, of course the state law must yield. But I confess my inability to discover a conflict. Laws are in conflict when, as pointed out in *Southern R. Co. v. Reid,* 222 U. S. 424, 32 Sup. Ct. 140, if one obey the state law he incurs the penalties of the federal law, and if he obey the federal law he incurs the penal-

ties of the state law. In other words, they are in conflict when obedience to one involves violation of the other.

"A state statute enacted in execution of a reserved power of the state is not to be regarded as inconsistent with an act of Congress passed in the execution of a clear power under the federal constitution unless the repugnance or conflict is so direct and positive that the two acts cannot be reconciled or stand together." *Missouri, K. & T. R. Co. v. Haber,* 169 U. S. 613, 18 Sup. Ct. 488.

Such is not the case here. The enforcement of the state statute in no manner interferes with the accomplishment of the purposes sought by the federal legislation. Both may be enforced, and the accomplishment of the purposes sought by both the federal and state government secured. They may stand side by side, and the presence of one in no manner detracts from the force of the other.

The majority opinion of the court, as I understand it, proceeds on the theory that the federal enactment is to be construed as covering the subject, thereby excluding any further enactments on the part of the states with reference thereto. This construction obtains where full power to regulate the subject has been delegated to Congress, such as the power to regulate interstate commerce, and where the federal enactment affirmatively discloses the intent on the part of Congress that its regulation shall be exclusive. But even where full power has been delegated to Congress such intent will not be imputed to the Congressional act unless it clearly appears therefrom. As said in *Reid v. Colorado,* 187 U. S. 137, 23 Sup. Ct. 92:

"It should never be held that Congress intends to supersede or by its legislation suspend the exercise of the police powers of the states, even when it may do so, unless its purpose to effect that result is clearly manifested."

There is nothing about the phraseology of the federal soldiers' and sailors' civil relief act to indicate such an intent. Neither can it be inferred from the purposes to be accomplished by its enactment. Plainly it was the purpose

of Congress to secure certain immunity for soldiers and sailors. The securement of such immunity is not hindered by the voluntary action of the state in granting further immunity. Congress simply demanded such immunity as was required by its military exigencies and, in my opinion, had no power to demand any more. The granting of further relief on the part of the states was of no concern to Congress. Its power was to demand the immunity necessary for its military purposes. It had no power to forbid further immunity on the part of the state. But whether this be true or not, the circumstances under which the legislation was passed furnish no justification for the conclusion that by the enactment of the soldiers' and sailors' civil relief act Congress intended to forbid the states from granting further immunity to the special objects of its gratitude, and unless such an intent can be gathered from the act or from the purposes of its enactment, as said in *Reid v. Colorado, supra,* it will not be so construed.

Where there is a conflict between a state statute and a federal enactment a state court should not hesitate to acknowledge the supremacy of the federal act. The power of a state to enact legislation which it deems beneficial to its own interests, however, should not be lightly yielded. I feel that the decision in this case is a voluntary and unnecessary surrender of a sovereign power. I cannot join in the capitulation.