NEW YORK LIFE INSURANCE COMPANY, Plaintiff, *v.* REGINALD R. LITKE, Individually and as Administrator of the Estate of CHARLOTTE E. LITKE, et al., Defendants.

Supreme Court, Special Term, Queens County, December 1, 1943.

*Dudley Davis* for plaintiff.

*Harry J. Macklis* for Reginald R. Litke and others, defendants.

DALY, J.   Heretofore, by an order dated April 3, 1943, the defendant, Reginald R. Litke, the sole owner of the equity in an action to foreclose a mortgage, and at that time in the armed service of the United States, obtained a stay, pursuant to the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940, as amended (U. S. Code, tit. 50, Appendix, § 501 *et seq.*), on condition that there be paid on account of real estate taxes the sum of five dollars per month.   (180 Misc. 297.)   This defendant

was inducted into the United States Army on November 12, 1942, released from active military service in June, 1943, by reason of his being forty-one years of age, and transferred to the Enlisted Reserve Corps of the United States Army.

The plaintiff now moves to vacate the stay contained in the aforesaid order upon the ground that more than three months have elapsed since this defendant's military service has terminated. By a separate motion (as suggested by the court, N. Y. L. J., Nov. 5, 1943, p. 1224), said defendant has applied for relief, pursuant to section 700 of the Soldiers' and Sailors' Civil Relief Act, as added October 6, 1942 (U. S. Code, tit. 50, Appendix, § 590).

The reports contain many decisions of the courts of this and other jurisdictions applying the provisions of the Federal Soldiers' and Sailors' Civil Relief Act to debt situations affecting persons in the armed services,[1] as for example, the order of April 3, 1943 made in this action. (180 Misc. 297.) The court's research has disclosed, however, no decision concerning the serviceman who has been returned to civilian life.[2] Such is the situation presented here, and such is the case which Congress had in mind when it added section 700 by the "Soldiers' and Sailors' Civil Relief Act Amendments of 1942"[3] (U. S. Code, tit.

---

[1] 130 A.L.R. 774–806; 137 A.L.R..1380. *et seq.;* 140 A.L.R. 1509–1514; 141 A.L.R. 1515–1524; 142 A.L.R. 1514–1516; 143 A.L.R. 1525–1527; 144 A.L.R. 1511–1512; 145 A.L.R. 1479–1481; 146 A.L.R. 1480–1485. Supplemental treatment of so-called "war annotations" is, according to the editors of the American Law Reports, to be included regularly in each succeeding volume of the work published in the course of the war.

[2] In *Matter of Aber* (180 Misc. 736), section 700, subd. (1), par. (b), of the Act was referred to but not involved in the ruling, which was to the effect that the sale of an automobile by a finance company, without a court order, is in violation of the rights of the owner, a member of the Enlisted Reserve Corps who had been ordered to report for military service.

[3] The provisions of section 700 (U. S. Code, tit. 50, Appendix, § 590) are as follows: "(1) A person may, at any time during his period of military service or within six months thereafter, apply to a court for relief in respect of any obligation or liability incurred by such person prior to his period of military service or in respect of any tax or assessment whether falling due prior to or during his period of military service. The court, after appropriate notice and hearing, unless in its opinion the ability of the applicant to comply with the terms of such obligation or liability or to pay such tax or assessment has not been materially affected by reason of his military service, may grant the following relief:

"(a) In the case of an obligation payable under its terms in installments under a contract for the purchase of real estate, or secured by a mortgage or other instrument in the nature of a mortgage upon real estate, a stay of the enforcement of such obligation during the applicant's period of military service and, from the date of termination of such period of military service or from

50, Appendix, § 513 *et seq.;* amd. 56 U. S. Stat. 769, eff. Oct. 6, 1942). Its purpose, as stated by the report of the Committee on Military Affairs on the amendments of October 6, 1942 (House Report No. 2198, 77th Congress, 2nd Session, p. 6), is to grant persons in military service " relief for a specified period after military service in order to enable them to liquidate their liabilities in an orderly fashion and not be subject to the accrual and payment of these liabilities all at one time ".

This section, as well as the other provisions of the Act, must be construed liberally in order to accomplish the broad objectives of Congress. As stated in *Andrews* v. *Gardiner* (185 App. Div. 477), which involved an exemption provision of the Military Law of the State of New York: " The statute should be construed to accomplish the purpose for which it was enacted * * * ".

Subdivision (1) thereof permits a person to apply for relief either while still in military service, or within six months after it has terminated in respect to (a) " any obligation or liability incurred by such person *prior* to his period of military service " or (b) in respect to any tax or assessment " whether falling due *prior to or during* his period of military service." (Italics supplied.)

---

the date of application if made after such service, for a period equal to the period of the remaining life of the installment contract or other instrument plus a period of time equal to the period of military service of the applicant, or any part of such combined period, subject to payment of the balance of principal and accumulated interest due and unpaid at the date of termination of the period of military service or from the date of application, as the case may be, in equal installments during such combined period at such rate of interest on the unpaid balance as is prescribed in such contract, or other instrument evidencing the obligation, for installments paid when due, and subject to such other terms as may be just.

" (b) In the case of any other obligation, liability, tax, or assessment, a stay of the enforcement thereof during the applicant's period of military service and, from the date of termination of such period of military service or from the date of application if made after such service, for a period of time equal to the period of military service of the applicant or any part of such period, subject to payment of the balance of principal and accumulated interest due and unpaid at the date of termination of such period of military service or the date of application, as the case may be, in equal periodic installments during such extended period at such rate of interest as may be prescribed for such obligation, liability, tax, or assessment, if paid when due, and subject to such other terms as may be just.

" (2) When any court has granted a stay as provided in this action no fine or penalty shall accrue during the period the terms and conditions of such stay are complied with by reason of failure to comply with the terms or conditions of the obligation, liability, tax, or assessment in respect of which such stay was granted."

The obligation involved here consists of a bond secured by a mortgage on real property dated April 28, 1938, and payable in full by April 1, 1963, in monthly installments of approximately $43.56 applicable to principal, interest on the balance, and to taxes, Federal Housing Administration, fire and hazard insurance premiums. This mortgage is insured under the terms of title II of the National Housing Act (U. S. Code, tit. 12, § 1707 *et seq.*) and the rules and regulations of the Federal Housing Administration. It is clearly an obligation within the meaning of subdivision (1), paragraph (a), of section 700 (U. S. Code, tit. 50, Appendix, § 590) which is limited to an " obligation payable under its terms in installments under a contract for the *purchase of real estate, or* secured by a mortgage or other instrument in the nature of a *mortgage upon real estate* " (italics supplied). The enforcement of such obligations may be stayed during military service and " from the date of termination of such period of military service or from the date of application if made after such service ". A stay may be granted for a period equal to the remaining or unexpired term left in the contract or mortgage itself for making the payments, *plus* the applicant's full period of military service or any part of such combined period, subject to the payment, during such combined period, or any part thereof, in equal installments of the balance of principal with accumulated interest due and unpaid at the termination of the military service or from the date of application, as the case may be.

Paragraph (b) of subdivision (1), which is not here involved, permits installment liquidation of obligations other than those in paragraph (a) of subdivision (1), but for a period confined to the length of time the applicant was in military service.

The application of the provisions of the Act is not authorized on the mere showing that the applicant is or had been in military service; there must be proof and the court must " be of opinion " that his ability to comply with the terms of the obligation or liability has been materially affected by reason of his military service. (*Boone* v. *Lightner,* 319 U. S. 561.) Otherwise, the section may be completely disregarded and the creditor permitted to resort to the remedies available for immediate enforcement. (See *Van Ree Publishing Co.* v. *Clemmings,* 181 Misc. 231; *Queens County Savings Bank* v. *Thaler,* 181 Misc. 229.)

The provisions of the statute are elastic and no hard and fast rules are prescribed. Each case must be determined upon its own merits and relief granted within the broad directions of Congress in accordance with the necessities of the particular

situation. The court is vested "after appropriate notice and hearing " with a wide discretion in providing for an installment liquidation of the ex-serviceman's debts " subject to such other terms as may be just." [Subd. (1), pars. (a), (b).]

The affidavit submitted by the plaintiff shows that the arrears up to and including November 30, 1943, amount to $520.23, and that the total out-of-pocket disbursements in the foreclosure action amount to $54.70, which includes a prospective fee for the cancellation of the *lis pendens*. The court is of the opinion that because of the moving defendant's military service until June 2, 1943, he is unable to pay the foregoing amount, totaling $574.93, at one time and is entitled to relief under section 700.

The fact that a Federal statute has been invoked in this court and no similar provision for relief has been added to the New York State Soldiers' and Sailors' Civil Relief Act (Military Law, § 300 *et seq.*) is not determinative. So far as war measures are concerned, Federal statutes supersede similar State law by virtue of article VI of the Federal Constitution (*Selective Draft Law Cases*, 245 U. S. 366; *Erickson* v. *Macy*, 231 N. Y. 86), and the national law controls and is binding on State courts generally. (*Konkel* v. *State of Wisconsin*, 168 Wis. 335.) In addition, the Act of 1940 contains the specific provision, as did the Act of 1918, to the effect that it shall apply to the " United States, the several States and Territories, the District of Columbia, and all territory subject to the jurisdiction of the United States * * * and to proceedings commenced in any court therein * * * ". (U. S. Code, tit. 50, Appendix, § 103 [1918], § 512 [1940].)

It is clear from the foregoing that the Federal Soldiers' and Sailors' Civil Relief Act was intended to apply to State courts. As said in *Erickson* v. *Macy* (p. 91, *supra*) : " The laws of the United States constitutionally enacted are the laws of the individual states and of all the people of the United States."

It appears uncontradicted that following his return to civilian life, the moving defendant was out of work for some five weeks and obtained employment with his old firm on July 13, 1943, at a salary which nets him, after deductions for withholding and Social Security taxes, the approximate sum of $51 per week, all of which, he contends, is consumed in supporting himself and his aged father. He has no other income and his only assets consist of a savings bank account, the balance in which amounts to $387.62.

It is conceded that on or about July 27, 1943, the defendant's attorney advised the plaintiff that his client was no longer in

military service and indicated a desire to work out some arrangement for resuming payments on the mortgage, including the installments in default. A tentative agreement was reached whereby the foreclosure disbursements of $54.70 would be paid in a lump sum, the payment of regular monthly installments resumed and those in arrears liquidated in installments of $5 per month. This arrangement was not consummated by reason of the defendant's unwillingness to enter into a stipulation discontinuing the action " without prejudice to the rights of the plaintiff to institute new proceedings to foreclose the mortgage for the existing and future defaults " and, in any event, to have the action discontinued until the arrears had been paid in full. In his moving affidavit submitted in support of the instant application, the defendant states that a discontinuance would place him at a disadvantage and would enable the plaintiff " within a few days after the present action was discontinued, [to] institute another foreclosure action, based upon the existing arrears and I would be unable to obtain any relief whatsoever from the court, because I would be unable to state that I was in active military service * * * ".

The defendant had some justification for rejecting a stipulation by the terms of which a new action to foreclose might be predicated upon revived existing defaults, the consequences of which had already been stayed by this court's order of April 3, 1943. There is, however, no merit to his insistence that lest he lose the benefits of his service status under the Act, the present action remain alive for the rather extended period it would take to fully pay the arrears at only $5 per month.

It seems to the court that the terms of liquidation the plaintiff was willing to accept were as liberal as it could direct under the provisions of section 700 of the Act. Under the National Housing Act and the regulations of the Federal Housing Administration, once a foreclosure action has been commenced the plaintiff is required to apply all payments received thereafter against the principal debt plus advances for taxes and insurance premiums, and unless the action is discontinued it may be unable to recover interest upon the principal recouped by means of the installment liquidation of the arrears. Thus, the plaintiff would be prejudiced if the action were permitted to remain undisposed of without any corresponding benefit to the defendant who, under the provisions of section 700, is entitled only to a stay of the enforcement of the obligation so as to permit him to liquidate the arrears in an orderly fashion and for a period of time calculated to make the burden of payment less onerous.

While a liberal construction is required in the interest of those for whose benefit the Act was enacted (*Dietz* v. *Treupel*, 184 App. Div. 448), " it is to be administered as an instrument to accomplish substantial justice " (*Hunt* v. *Jacobson*, 178 Misc. 201). This means an *equitable* consideration of the rights of *both* parties to the end that their respective interests may be properly conserved. Under the circumstances presented here, this can best be accomplished by a discontinuance of the action upon the payment to the plaintiff of the out-of-pocket legal disbursements, the resumption of the regular monthly installment payments, commencing with the payment of $43.34 due December 1, 1943, and the liquidation of the arrears, in the sum of $520.23 with interest at the rate of five per cent as provided in the bond and mortgage, at the rate of $5 per month commencing December 1, 1943.

The motions of the respective parties are, therefore, granted to the extent of modifying the order of this court dated April 3, 1943, to provide:

(1) the discontinuance of the pending action upon payment to the plaintiff of its disbursements totaling $54.70, within five days of the service of the order hereon, with notice of entry;

(2) a stay of the enforcement of the bond and mortgage here involved on condition that the regular monthly installments required thereby be resumed with the payment due December 1, 1943, and in addition, that the arrears existing as of November 30, 1943, totaling $520.23, be liquidated by the payment on the first day of each month, commencing December 1, 1943, of the sum of $5, said total amount to be applied first in accumulation toward the next real estate tax and insurance premiums to become due and the balance on account of the oldest delinquent monthly installments which may now be due or which may have become due at the date of said payment and to interest computed at the rate of five per cent per annum from the date due to date of payment on so much of each such delinquent installment as includes amortization of the principal indebtedness and reimbursement for advances made by plaintiff in payment of taxes and insurance premiums; and

(3) the payments required to be made on December 1, 1943, only may be made within five days of the service of the order hereon, with notice of entry.

Settle order on two days' notice.