### Keener et ux. v. Vannan et ux.

*Wilhelm E. Shissler*, for petitioner.

*Douglass D. Storey*, of *Storey & Bailey*, for respondents.

RUPP, J., May 28, 1945.—This matter comes before us on plaintiffs' petition, and rule granted thereon, for leave to proceed to evict defendants from a portion of an apartment building owned by the former and located at 3365 North Fifth Street, Susquehanna Township, Dauphin County.

The premises were leased on August 9, 1941, and presently are occupied by Marguerite P. Vannan and her infant son, the husband and father having enlisted in the Seabees in July of 1943 and being on duty in the South Pacific.

Written notifications to vacate were sent defendants on December 16, 1944, and February 9, 1945, the latter notice citing as authority section 1388.286 (*a*) (5) of the regulations of the Office of Price Administration, which provides for the removal of tenants where the landlord seeks in good faith to recover possession of premises for the immediate purpose of substantially altering or remodeling them in a manner which cannot practically be done with the tenants in occupancy and

the plans for such work, where required, have been approved by the proper authorities.

Mrs. Vannan failed to move and the instant petition followed, in accordance with section 300 of the Soldiers' and Sailors' Civil Relief Act of October 17, 1940, c. 888, 54 Stat. at L. 1178, as amended by the Act of October 6, 1942, c. 581, sec. 8, 56 Stat. at L. 769, which reads in part as follows (50 U. S. C. App. §530) :

"(1) No eviction or distress shall be made during the period of military service in respect of any premises for which the agreed rent does not exceed $80 per month, occupied chiefly for dwelling purposes by the wife, children, or other dependents of a person in military service, except upon leave of court granted upon application therefor or granted in an action or proceeding affecting the right of possession.

"(2) On any such application or in any such action the court may, in its discretion, on its own motion, and shall, on application, unless in the opinion of the court the ability of the tenant to pay the agreed rent is not materially affected by reason of such military service, stay the proceedings for not longer than three months, as provided in this Act, or it may make such other order as may be just. Where such stay is granted or other order is made by the court, the owner of the premises shall be entitled, upon application therefor, to relief in respect of such premises similar to that granted persons in military service in sections 301, 302 and 500 of this Act [sections 531, 532 and 560 of this Appendix] to such extent and for such period as may appear to the court to be just."

In compliance with the regulations of the Office of Price Administration, defendants were notified in writing of plaintiffs' intent to petition the court, and copies of all the foregoing notices and of the petition were duly sent to the local area rent office.

The purpose of the Relief Act is expressed in section 100 thereof, to wit (50 U. S. C. App. §510):

"In order to provide for, strengthen, and expedite the national defense under the emergent conditions which are threatening the peace and security of the United States and to enable the United States the more successfully to fulfill the requirements of the national defense, provision is hereby made to suspend enforcement of civil liabilities, in certain cases, of persons in the military service of the United States in order to enable such persons to devote their entire energy to the defense needs of the Nation, and to this end the following provisions are made for the temporary suspension of legal proceedings and transactions which may prejudice the civil rights of persons in such service during the period herein specified over which this Act remains in force."

Thus, the declared intent of the act, coupled with the established principle that, in like manner as prior examples of this type of remedial legislation, it should be liberally construed in the interest of those for whose benefit it was enacted: Hunt v. Jacobson, 178 Misc. 201, 33 N. Y. S.(2d) 661 (1942), Davis, Exec., v. Brown, 46 D. & C. 123 (1942), and cases cited therein; Modern Industrial Bank v. Grossman et al., 180 Misc. 415, 40 N. Y. S.(2d) 628 (1943), Stein v. David, 55 Dauph. 1 (1944), and Hummel et ux. v. Sheehan et ux., 52 D. & C. 492, no. 1150, December term, 1944, C. P. No. 7 of Phila. Co. (1945); make it clear that all doubts must be resolved in favor of the serviceman, and the courts interpreting the statute have so held: Davis, Exec., v. Brown, supra; Hummel et ux. v. Sheehan et ux., supra.

However, it also has been emphasized that the law was not intended as a blanket moratorium of all litigation affecting those in military service; that each case must stand on its own facts, and that in every instance

the equities must be carefully weighed: Hunt v. Jacobson, supra, Davis, Exec., v. Brown, supra, Hummel et ux. v. Sheehan et ux., supra, New York Life Ins. Co. v. Litke et al., 181 Misc. 32, 41 N. Y. S. (2d) 526 (1943), Railroad Federal Savings & Loan Assn. v. Morrison et al., 179 Misc. 893, 40 N. Y. S. (2d) 319 (1943), and First Federal Savings & Loan Assn. v. White et ux. (No. 2), 49 D. & C. 169 (1943).

Accordingly, with respect to cases such as the one before us, section 300(2) of the act, supra, vests the courts with wide discretion to make such order as will best serve the ends of justice.

With these principles in mind we have carefully examined the record. It reveals that the owner desires to completely remodel and change the building involved from a three- to a five- or six-apartment structure; that he has obtained practically all the necessary supplies and materials and the required approval of the plans by the proper Federal housing agency; that he has completed the renovation of a portion of the premises and cannot proceed without possession of the section occupied by Mrs. Vannan; that he offered to pay her removal expenses; that he proffered her two other apartments, one at the same rental but affording less accommodation (this offer was later withdrawn) and the other providing equal accommodation but at a higher rental; that he also had another property owner offer her comparable accommodations at a higher rental, and that all the above proposals were refused.

Mrs. Vannan's present quarters consist of three rooms and private bath on the second floor, two rooms on the third floor, and one half of a double garage located at the rear of the premises. She sublets the garage for $3 a month and pays a monthly rental of $35 and one third of the electric bill for the entire building. No default in payment of rent has been al-

leged. Her income, consisting entirely of the Government allotment for herself and child, is $130 per month. She maintains that she requires similar accommodations but cannot afford a higher rent; that the offers made her were refused because they did not meet these requirements, and that her own independent attempts to procure adequate housing within her price range have failed. To date, her continuing search has ranged as far west as Carlisle and as far east as Annville, her activities including personal surveys, newspaper advertising, telephone calls to real estate agents, all of whom refused to even register her name, and soliciting her friends' aid.

Surely Mrs. Vannan evidenced her good faith in this matter by putting forth far greater efforts than might have been expected of a person solely entrusted with the care of an infant. Unfortunately for plaintiffs, due to the well-known housing shortage in this area, she has been unsuccessful. Far from warranting our directing her eviction, this is the very type of situation for which the act's safeguards were provided. When Mr. Vannan volunteered in the service of his country, he left his wife comfortably situated in her present surroundings. Certainly he did not anticipate that in his absence on such a mission she might be forced to accept unsuitable quarters or such as are not commensurate with her means. That her removal, with its resulting discomfort or financial embarrassment, would cause him anxiety and mental strain, thus hampering his contribution to the war effort, is self-evident. Such a result not only would be contrary to our natural inclination and public policy, but in direct contravention of the avowed purpose of the act.

This case is easily distinguishable from Stein v. David, supra, cited by plaintiffs, wherein defendant was a serviceman and the premises involved were occupied by his dependent mother and his two sisters. There

the tenants were all adults; defendant had never left the country and, in fact, was home on leave during the pendency of the proceedings; in addition to the mother's allotment, the sisters' combined earnings amounted to approximately three thousand dollars a year; and there was no evidence that they were unable, or had made any effort, to obtain another residence. Moreover, there plaintiffs and their three small children were constrained to live in a three-room apartment pending the withdrawal of the Davids from their home.

Rather, this closely resembles those instances wherein courts refused to grant the right to evict dependents of servicemen without the country, where sincere but unsuccessful attempts to find other lodgings had been made, even though plaintiffs had purchased the occupied premises for the express purpose of residing there. See Arch v. Berson, civil docket M-1086, District Court of the United States for the Eastern District of Pennsylvania (1944) ; Hummel et ux. v. Sheehan et ux., supra.

In light of all the foregoing, and after carefully considering the facts and weighing the pros and cons of this matter, we have concluded that, although plaintiffs' plight is regrettable, the equities favor defendants. Accordingly, the rule must be dismissed.

And now, May 28, 1945, the rule is hereby dismissed.