24 So.2d 219

### BROWN SERVICE INS. CO., Inc., v. KING et al.

### 8 Div. 313.

Supreme Court of Alabama.
Dec. 27, 1945.

S. A. Lynne, of Decatur, for appellees.

Spain, Davies, Gillon, Grooms & Young and H. H. Grooms, all of Birmingham, and Norman W. Harris, of Decatur, for appellant.

LIVINGSTON, Justice.

The original bill of complaint in this cause was filed on October 30, 1944, by Brown Service Insurance Company, Inc., a corporation (the appellant here), against F. H. King, Mrs. F. H. King and the Anniston Better Built Homes, Inc., a corporation, to foreclose a mortgage. The Anniston Better Built Homes, Inc. (formerly Decatur Better Built Homes, Inc.), had become indebted to the appellant in the amount of $3550, evidenced by a promissory note secured by mortgage. This mortgage was executed pursuant to the National Housing Act, and was insured by the Federal Housing Administration. Subsequent to the execution of the mortgage, the appellee King purchased the mortgaged property and assumed the payment of the mortgage indebtedness. All payments due on the mortgage indebtedness up to April 1, 1944, were made, but default was made in the payments accruing subsequent to that date.

The bill prayed that the mortgage be foreclosed or, in the alternative, that, "in the event the court determines that the defendant F. H. King is unable on account of his military service to pay said indebtedness as the same is due and payable, it will ascertain and determine the amount he is able to pay, and will order that he pay such amount at such periods as to the court may seem equitable, and that in default thereof said mortgage be foreclosed and said property be sold. * * * Any deficiency between the proceeds of the sale and the amount of the indebtedness, interest, attorneys' fee and cost be reduced to judgment against the defendant F. H. King and the defendant Anniston Better Built Homes, Inc."

On December 8, 1944, the appellee F. H. King under the Soldiers' and Sailors' Civil Relief Act filed a petition to stay the foreclosure proceeding. Upon hearing the petition, the court entered its order staying the proceedings to foreclose, and ordered appellee King to pay, beginning with the month of May, 1944, to appellant the sum of $4.74 per month during King's period of military service, and for three months thereafter. The court further ordered that a deposit of $30.60, held by appellant to cover taxes and insurance premiums, be applied to mortgage payments in default.

The following is appellant's statement of the case made by the evidence:

"It is agreed that the principal balance due on the mortgage was $3,500.08. At the date of the decree, the taxes and hazard premiums, the interest and the F. H. A. mortgage insurance amounted to $19.44 a month. The mortgage provided that the payments due on the note for principal and interest should be $19.74 per month. The fire and hazard insurance amounts to $4.74. The over-all payments amount to $26.00 per month. In the agreed statement appearing in the record, it is stated that the charges, exclusive of the principal, amount to $19.44, whereas, the mortgage note provides for principal and interest payments of $19.74.

"The taxes amount to $35.75 per annum, or $2.98 per month. The hazard insurance amounts to $21.09 per annum, or $1.76 per month. Interest at 4½% on the unpaid balance amounts to $13.12 monthly. Consequently, the breakdown as to these items is as follows:

| "Interest | $13.12 |
|---|---|
| Taxes | 2.98 |
| Hazard Insurance | 1.76 |
| Total | 17.86 |

"The total of $19.44 includes F. H. A mortgage insurance. The $17.86 deducted from $19.44 leaves $1.58 for this item. The principal payments amount to the difference between $19.44 and $26.00, which is $6.56 per month. By using the over-all payment of $26.00, the final breakdown is as follows:

| "Interest | $13.12 |
|---|---|
| Principal | 6.56 |
| Taxes | 2.98 |
| Hazard Insurance | 1.76 |
| F. H. A. Mtg. Ins. | 1.58 |
| Total | 26.00 |

"The court's decree directed that appellee King pay $4.74 per month, which is the amount of the taxes and hazard insurance only. No provision was made for the payment of any part of the principal, nor of interest in the amount of $13.12 per month, nor the F. H. A. mortgage insur-

314

ance premium of $1.58 per month, a total for these two items of $14.70. These two items alone will amount to $176.40 per annum. The decree stayed the payments of principal, interest and mortgage insurance premium amounting to $21.26 per month or 82% of the obligation.

"Appellee King quit work at Wright Field on April 15, 1944, expecting to be inducted into the Army. He was actually inducted on June 22, 1944. He has a wife and three children who occupy the house on the mortgaged premises. He has an allotment for his wife and children of $120.00 per month and receives himself $14.80, or a total for the family of $134.80. At the time of the trial, he had received his overseas orders and presumably is now overseas and, of course, he would receive, in addition to the pay referred to, the allowances for overseas service, which we believe will be found to be 20% additional pay for an enlisted man.

"The house that was purchased by King was one of sixteen similar houses built by the Anniston Better Built Homes, Inc., six of which houses have been sold and one of which was the house purchased by King. The remaining ten are renting for $39.99 per month. The undisputed evidence was that this was a reasonable rent for these houses and consequently for the house purchased by King. The approximate market value of this house at the time of the trial was $4,000.00. The loan was made on the basis of a value of $4,050.00. Consequently, the loan was made on the basis of approximately 87½% of the value of the property, leaving very little equity in the purchaser."

To the foregoing, we may add that it is undisputed that King purchased the mortgaged property from the Anniston Better Built Homes, Inc., on November 2, 1943, paying therefor the sum of $400 in cash and assumed the $3550 mortgage. That when King's deferment from military service was disallowed, and he was released from his job at Wright Field on April 15, 1944, for induction into the Army, his salary or wages was approximately $400 per month. That when King was inducted into the Army he had between $200 and $300 in money and no other property. That since his induction, illness in his family has reduced his capital to less than $100.

Appellant contends that the trial court abused its discretion in fixing the payments to be made by appellee at only $4.74 per month.

Title 50 U.S.C.A. Appendix § 532(2), governs the matter here at issue. That part of the section referred to is as follows:

"(2) In any proceeding commenced in any court during the period of military service to enforce such obligation arising out of nonpayment of any sum thereunder due or out of any other breach of the terms thereof occurring prior to or during the period of such service the court may, after hearing, in its discretion, on its own motion, and shall, on application to it by such person in military service or some person on his behalf, unless in the opinion of the court the ability of the defendant to comply with the terms of the obligation is not materially affected by reason of his military service—

"(a) stay the proceedings as provided in this Act; or

"(b) make such other disposition of the case as may be equitable to conserve the interests of all parties."

The general purpose of the Act was to protect those in military service, and to prevent injury to their civil rights during their term of service arising from judicial proceedings conducted against them in their absence. It was intended to relieve persons in military service from mental distress occasioned by the handicap of being in service, resulting in inability to meet financial and other obligations; and to foster a mental repose through the intervention of courts to the end that such rights and remedies shall not be imperiled in consequence of military service.

However, the Act does not apply merely because such person is in military service, and is not to be invoked for a needless purpose, but is to be administered as an instrument to accomplish substantial justice, Hunt v. Jacobson, 1942, 178 Misc. 201, 33 N.Y.S.2d 661, and has application only when the military service has prevented or is preventing a member of the military forces from meeting the obligations imposed upon him by the instrument sued on. Brooklyn Trust Co. v. Papa, Sup. 1941, 33 N.Y.S.2d 57.

As above noted, the Act provides the court may (after hearing) in its discretion, on its own motion, and shall, on application to it by such person in military service, or some person on his behalf, unless in the opinion of the court the ability of defend-

ant to comply with the terms of the obligation is not materially affected by reason of his military service, (a) stay the proceedings as provided in this Act; or (b) make such other disposition of the case as may be equitable to conserve the interest of all parties.

Appellant's quarrel is not with the stay proceedings, but complains that with no payment on the principal or interest, and with King owning only a $400 equity in the premises, which would in all probability be entirely consumed in about two and one-third years, and by reason of the consumption of such equity, the mortgagor will have no incentive to resume payments, and the mortgagee thus faced with a loss on its investment.

■ The Act must be liberally construed for the benefit of the service man, and not the creditor, unless in the opinion of the court the ability of the service man to comply with the terms of the obligation is not materially affected by reason of military service. It places upon the trial judge a wide discretion; and, in determining whether a service man is entitled to relief, each case must stand upon its own merits. New York Life Ins. Co. v. Litke, 181 Misc. 32, 45 N.Y.S.2d 576, 579.

In the Litke case the defendant, the sole owner of the equity, in an action to foreclose a mortgage, and at the time in the armed services, was granted a stay on condition that the real estate taxes amounting to $5 per month be paid. See, New York Life Ins. Co. v. Litke, 180 Misc. 297, 41 N.Y.S.2d 526. Later, defendant was released from active service and transferred to the reserve corps. Another suit was filed to vacate the stay order, the defendant having returned to civilian life. The court held that the arrears in the amount of $520.23, resulting from the stay order, were to be liquidated at the rate of $5.00 per month. New York Life Ins. Co. v. Litke, 181 Misc. 32, 45 N.Y.S.2d 576.

In Hunt v. Jacobson, supra [178 Misc. 201, 33 N.Y.S.2d 664], the defendant owned only a one-sixth interest, being merely a nominal party, and the court very aptly said: "This does not mean to imply that the statute is to be made applicable to every situation, without limitation, merely because such person is in military service; and it (the Act) is not to be employed as a vehicle of oppression or abuse; its invocation is not to be permitted for any needless or unwarranted purpose; it is to be administered as an instrument to accomplish substantial justice." Such statutes were enacted to give a degree of mental repose, through the intervention of courts, for the protection of the service man's rights and remedies, but not to be unjustly taken advantage of.

In the case of Nassau Savings & Loan Assn. v. Ormond, 179 Misc. 447, 39 N.Y.S. 2d 92, the defendant was one of the co-owners, and there were tax arrears and assessments amounting to $495.60 (a fact to be taken into consideration), the entire unpaid balance being $2,633.67. The court held that the allotment by the son, the allowance by the Government, plus the father's pension, were sufficient to justify the payment of current taxes, and granted the stay.

In Cortland Savings Bank v. Ivory, Sup., 27 N.Y.S.2d 313, at the time defendant was called into active service, he received $203.80 monthly, and while in service he received $154 for the first six months and later $177.30 per month. The court in the exercise of its discretion granted the stay, reducing the monthly payments from $44.33 to $26.95.

■ Here, defendant King's ability to comply with the terms of the obligation is very materially affected by reason of his military service, and we are reluctant to say the court in any wise exceeded its broad discretion in directing that only current taxes and hazard insurance be paid monthly out of his meager income.

It necessarily follows that the motion for mandamus must be denied, and the judgment of the lower court affirmed.

Affirmed.

GARDNER, C. J., and BROWN and SIMPSON, JJ., concur.