872 So.2d 868 (2003)
Ex parte K.N.L.
(In re B.D.P., a minor child).
2020581.
Court of Civil Appeals of Alabama.
August 8, 2003.
David P. Shepherd, Fairhope, for petitioner.
*869 Karol J. Kemp, Fairhope, for respondent W.D.P.
CRAWLEY, Judge.
K.N.L., the mother of B.D.P., petitions this court for a writ of mandamus directing the Baldwin Juvenile Court to grant her motion to stay a pendente lite child-custody proceeding. We deny the petition.
The mother is a member of a United States Army Reserve unit that was called to active duty on February 10, 2003, for deployment overseas as a part of "Operation Enduring Freedom." The mother sought a stay of the pendente lite child custody proceeding pursuant to the Soldiers' and Sailors' Civil Relief Act of 1940, 50 App. U.S.C. § 501 et seq. ("the Act").
K.N.L. ("the mother") and W.D.P. ("the father") are the parents of B.D.P. ("the child"), a 10-year-old girl. The parents have never been married. They lived together for the first six years of the child's life and then broke up in 1999, with the father taking up residence in Alabama and the mother taking up residence in Pennsylvania. For the next two years, the child, by agreement of the parties, lived with the father in Alabama during the school year and with the mother in Pennsylvania during the summer. In May 2000, the mother executed a power of attorney in favor of the father, allowing him to assume and maintain guardianship of the child during a time when the mother's reserve unit had been activated.
On May 2, 2002, the father filed in the Baldwin Juvenile Court a petition seeking sole physical custody of the child and requesting child support from the mother. The mother alleges that she was not served with the father's petition until nearly two months after the petition was filed. On May 20, 2002, as the parties had previously agreed, the child left for summer visitation with the mother in Pennsylvania. On July 28, 2002, the mother filed a motion for a 30-day extension of time to answer the father's petition. Three days later, the mother filed an appearance for the limited purpose of filing a motion to dismiss the father's petition based upon her belief that the Alabama court had no personal jurisdiction over her. The mother did not return the child to the father at the end of the summer visitation.
On November 7, 2002, following a hearing, the juvenile court denied the mother's motion to dismiss. On November 14, 2002, the mother filed a "Contest of Paternity," alleging that W.D.P. was not the child's biological father and requesting that the court order paternity testing. On December 13, 2002, the father, alleging that the mother had failed to return the child at the beginning of the school year and had denied him any physical contact with the child, filed a petition for pendente lite custody of the child, or, in the alternative, for visitation with the child pending a final hearing on his custody and support petition.
On January 17, 2003, the juvenile court determined, based on an affidavit of paternity signed by the parties, that the issue of paternity was precluded by the doctrine of res judicata;[1] therefore, the court denied the mother's request for paternity testing. The juvenile court set the father's custody and child-support petition for a hearing on April 14, 2003.
On February 26, 2003, the father filed an emergency motion for pendente lite custody of the child, alleging that the mother had filed a number of baseless motions in an attempt to delay the custody proceedings; that the mother had failed to *870 return the child at the beginning of the school year according to the parties' agreement; that he had reason to believe that the mother's military unit had recently been activated; that the mother had given legal guardianship of the child to the maternal grandmother in Florida; and that the mother had set up a child-support allotment payable to the maternal grandmother. The juvenile court set the father's emergency motion for pendente lite custody for a hearing on March 19, 2003. On the morning set for the hearing, the mother moved to stay the proceedings, alleging that, because of her military orders, it was impossible for her to attend any custody hearingfinal or pendente liteand seeking a postponement under the Act until she returned from her overseas assignment. The mother attached to her motion a letter from her commanding officer and a copy of her activation orders, dated February 10, 2003, from the Department of the Army. The father filed an affidavit on April 21, 2003, stating that he had been informed by the child that, one week before the scheduled March 19, 2003, hearing, the mother's new husband had traveled to the home of the maternal grandmother in Florida to retrieve the child and to take her back to Pennsylvania to live with him while the mother was on active duty.
In Ex parte Integon Corp., 672 So.2d 497 (Ala.1995), our supreme court reiterated what a petitioner must establish in order to be entitled to the issuance of a writ of mandamus.
"Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court."
672 So.2d at 499. The applicable portion of the Act provides:
"At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act [Sections 501 to 591 of this Appendix], unless, in the opinion of the court, the ability of the plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service."
50 App.U.S.C. § 521. In Richardson v. First National Bank of Columbus, 46 Ala. App. 366, 242 So.2d 676 (Civ.1970), this court explained the purpose of the Act:
"`The Soldiers' and Sailors' Civil Relief Act of 1940 (in like manner with all similar previous acts in our history) was prompted by at least two considerations, first, the maintenance in the armed forces of a reasonable measure of that unbothered serenity and security in respect of personal responsibilities which effectively promotes military efficiency and the national defense; and secondly, the assurance that in the field of individual justice no advantage in judicial proceedings by or against a soldier or sailor will result from his absorption in his country's defense.'"
46 Ala.App. at 370, 242 So.2d at 679 (quoting Bowsman v. Peterson, 45 F.Supp. 741, 743 (D.Neb.1942)). "[T]he Act does not apply merely because [a] person is in military service and is not to be invoked for a needless purpose, but is to be administered as an instrument to accomplish substantial justice." Brown Serv. Ins. Co. v. *871 King, 247 Ala. 311, 314, 24 So.2d 219, 222 (1945). The Act "places upon the trial judge a wide discretion; and, in determining whether a service [member] is entitled to relief, each case must stand upon its own merits." 247 Ala. at 315, 24 So.2d at 222. "Whether to grant a continuance or stay pursuant to the act is a matter which rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion." Riley v. State ex rel. White, 563 So.2d 1039, 1040 (Ala.Civ.App.1990)(citing Martin v. Wagner, 247 Ala. 591, 25 So.2d 409 (1946)).
Decisions construing the Act indicate that when a military parent seeks a stay of a child-custody or visitation proceeding, the trial judge should consider the impact of such a stay on the other parent's right to visit and communicate with the children. See, e.g., Henneke v. Young, 145 Ohio App.3d 111, 115, 761 N.E.2d 1140, 1143 (2001). In Henneke, the divorce judgment awarded the father, who was stationed in Korea, custody of the parties' three children and gave the mother "`[v]isitation... as agreed upon between the parties.'" 145 Ohio App.3d at 112, 761 N.E.2d at 1141. In response to the mother's motion to set a specific visitation schedule, the trial court awarded the mother one week of visitation in August. When the father indicated his inability to comply with the visitation order, the mother filed a petition seeking to hold the father in contempt. The father moved to have the contempt proceeding stayed until he was "relieved from his current assignment in Korea." 145 Ohio App.3d at 113, 761 N.E.2d at 1141. The trial court granted the stay, the mother appealed, and the Ohio appellate court reversed. The court stated:
"[W]hen exercising its discretion in this matter, the trial court should have considered the nature of the civil action at issue here. The dispute between the parties involves their childrenthe oldest of whom was nine years old at the time the proceedings were stayedand the right of their natural mother to visit and communicate with them. Under the trial court's ruling, [the father] could prevent [the mother] from seeing her children for a substantial period of time while he is serving in Korea, without [the mother's] being able to do anything to vindicate her right, pursuant to the orders of the trial court, to visit and to communicate with her children. Under these circumstances, we conclude that the trial court acted unreasonably by suspending the proceedings in this matter, during the entire time that [the father] will serve in Korea, pursuant to the Soldiers' and Sailors' Civil Relief Act."
145 Ohio App.3d at 115, 761 N.E.2d at 1143.
Citing decisions from Connecticut, Georgia, and Mississippi, the mother argues that the juvenile court's order denying a stay cannot be upheld because it failed to recite specific findings by the juvenile court that the mother's "ability to defend will not be materially affected by reason of [her] military service." In light of United States Supreme Court authority to the contrary, we do not consider those decisions persuasive. Construing the Act in Boone v. Lightner, 319 U.S. 561, 571, 63 S.Ct. 1223, 87 L.Ed. 1587 (1943), the Court stated:
"The Act does not expressly require findings. It is one intended to apply to courts not of record as well as those of record, and it requires only that the court be of opinion that ability to defend is not materially affected by military service."
Moreover, we fail to see how the juvenile court's refusal to stay a pendente lite custody order could materially affect the mother's ability to defend her interests at a final custody hearing after she returns *872 from active duty. Compare Crowley v. Crowley, 708 N.E.2d 42 (Ind.Ct.App.1999)(holding that the trial court did not abuse its discretion by denying a military parent's motion for a stay pursuant to the Act and by entering a provisional child-support order during the pendency of the divorce action because the service member's ability to prosecute or defend at the final hearing would not be impaired); Catlin v. Catlin, 494 N.W.2d 581 (N.D.1992)(holding that the trial court's refusal to stay an interim custody order did not prejudice the military parent's litigation position on the merits in a permanent-custody hearing); Trevino v. Trevino, 193 S.W.2d 254, 256 (Tex.Civ.App.1946)(stating that because an interim custody order was "temporary in nature and subject to being reopened upon [the father's] return [from military service], we do not think the court abused its discretion in [denying a stay under the Act]").
The juvenile court would have been well within its discretion in determining that the mother had intentionally delayed the custody proceedings and had used her active-duty orders in an eleventh hour attempt to effect a long-term denial of the father's rights to visitation and custody. The Act "`is not to be employed as a vehicle of oppression or abuse....' Such statutes were enacted ... for the protection of the service [member's] rights and remedies, but not to be unjustly taken advantage of." Brown Serv. Ins. Co. v. King, 247 Ala. at 315, 24 So.2d at 222 (quoting Hunt v. Jacobson, 178 Misc. 201, 205, 33 N.Y.S.2d 661, 664 (Sup.Ct.1942)). See also Fluhr v. Fluhr, 140 N.J.Eq. 131, 134, 52 A.2d 847, 848 (1947)(stating that the Act "is not to be employed to enable [a person in the military] ... to obtain indefinite delay"). The juvenile court would also have been within its discretion in deciding that the best interests of the child would be served by having her reside, pending a final hearing on the merits of the custody issue, with her natural father rather than with a third party such as the maternal grandmother or the mother's new husband.
Finding that the mother had no clear legal right to a stay and that the juvenile court did not abuse its discretion in denying the stay, we conclude that the petition for the writ of mandamus is due to be denied.
PETITION DENIED.
YATES, P.J., and PITTMAN and MURDOCK, JJ., concur.
THOMPSON, J., concurs in the result.
NOTES
[1] See § 26-17-22(h), Ala.Code 1975 ("[a] signed voluntary acknowledgment of paternity completed in accordance with this section [the `hospital paternity acknowledgment program'] shall be considered a legal finding of paternity....").